# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITE HERE LOCAL 30,<br><br>　　　　　　　　　　Petitioner,<br><br>v.<br><br>OMNI HOTELS MANAGEMENT CORPORATION d/b/a OMNI LA COSTA RESORT & SPA,<br><br>　　　　　　　　　　Respondent. | Case No. 19cv830-MMA (LL)<br><br>**ORDER GRANTING PETITION TO COMPEL ARBITRATION AND DENYING PETITIONER'S REQUEST FOR ATTORNEYS' FEES**<br><br>[Doc. Nos. 1, 11, 13] |

On May 3, 2019, Unite Here Local 30 ("Petitioner") filed a petition to compel arbitration ("Petition") against Omni Hotels Management Corporation d/b/a Omni La Costa Resort & Spa ("Respondent"). Doc. No. 1.[1] Respondent moves to dismiss the Petition, arguing there is no basis to compel arbitration under the parties' collective bargaining agreement ("Agreement") and, alternatively, Petitioner fails to state a plausible claim for violation of the Agreement. Doc. No. 11 at 8, 10. Petitioner responded in opposition to the motion, and Respondent replied. Doc. Nos. 12, 21.

---

[1] All citations refer to the pagination assigned by the CM/ECF system.

Additionally, Petitioner moves for summary judgment and attorneys' fees. Doc. No. 13. Respondent opposed the motion, and Petitioner replied. Doc. Nos. 20, 22. The Court found the matters suitable for determination on the papers and without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7.1.d.1. Doc. No. 23. As explained in further detail in footnote 5, *infra*, the Court disposes of the Petition, the motion to dismiss, and the motion for summary judgment in a single order. For the reasons set forth below, the Court **GRANTS** Petitioner's Petition to compel arbitration and **DENIES** Petitioner's motion for attorneys' fees.

## I. BACKGROUND[2]

Petitioner is a labor organization as defined in the Labor-Management Relations Act (LMRA) and has its principal place of business in California. Petition ¶ 2; *see also* 29 U.S.C. § 152(5) (defining "labor organization"). Respondent is incorporated and has its principal place of business in California. Petition ¶ 2. Petitioner represents various employees of Respondent as their "sole bargaining agent." Agreement § 1(a).

Petitioner and Respondent signed the Agreement on May 14, 2018, but the Agreement became effective from January 1, 2017, through December 31, 2019.[3] Petition ¶ 6; Agreement p. 1. Petitioner alleges the Agreement requires Respondent to arbitrate all claims. Petition ¶ 9. The Agreement provides a "grievance procedure" if a conflict arises between the parties. *See* Agreement § 27. As a preliminary matter, the Agreement states "[e]mployees are *encouraged* to first bring any type of dispute, disagreement, or concern to the employee's supervisor or manager, or the Employer's Human Resources Department, regardless of whether the employee believes this

---

[2] These facts are taken from the Petition, the parties' separate statements and responses thereto, as well as the supporting declarations and exhibits.

[3] Additionally, "[t]he members of the bargaining-unit ratified the collective-bargaining agreement on December 8, 2017. Petition ¶ 6.

2

Agreement to have been violated." *Id.* at § 27(a) (emphasis added).[4] Under the Agreement, "grievance is defined as *a dispute* between the parties as to the *interpretation or application of any provision(s)* of this Agreement that arises after this Agreement is signed and before it terminates." *Id.* at § 27(b) (emphasis added). When a grievance arises, both parties are obligated to share relevant information pertaining to the grievance. *Id.* at § 27(c). Failure to do so bars the evidence's use at mediation or arbitration. *Id.* The grievance procedure requires the following:

> (d) All grievances must be submitted to the Employer's Human Resources Director or his or her designee within fourteen (14) calendar days of the employee or Union having known, or should have known, of the occurrence. The Employer has fourteen (14) calendar days in which to respond to said grievance in writing. The parties may schedule a grievance hearing at any mutually acceptable time after the Union files the grievance and prior to the Union's deadline for moving the grievance to the next step. Regardless, *if a settlement of this grievance is not reached at the grievance hearing or following the Employer's response, the Union has fourteen (14) calendar days from receipt of the Employer response to request mediation or file a Notice of Intent to Arbitrate*. Failure of the Union to request mediation or to present a Notice of Intent to Arbitrate within fourteen (14) days of receipt of the Employer response shall disallow any further action on the grievance unless the time period is waived by the Union and the Employer in writing.
>
> (e) In the event the matter cannot be amicably adjusted, if agreed to by the Union and the Employer, it may be submitted to mediation before an unpaid representative designated by Federal Mediation and Conciliation Services ("FMCS"). A mediation shall convene within fourteen (14) days after receipt of notice given in writing by either party to the FMCS that mediation is necessary. Prior to the mediation the parties shall designate whether the mediator's opinion is to be final and binding. In the event there is no agreement between the parties regarding the binding or non-binding nature of the mediator's opinion, either party may proceed to subsection

---

[4] Respondent misquotes Agreement § 27(a). In its motion to dismiss, Respondent uses the phrasing "[e]mployees are *required*," Doc. No 11 at 6 (emphasis added), despite the Agreement stating "[e]mployees are *encouraged*," Agreement § 27(a) (emphasis added).

3

27(f) below or the parties may nevertheless by mutual agreement continue with the procedures set forth in this paragraph (e). The mediator shall provide an oral opinion upon completion of the mediation.

In the event that the parties have not designated the mediator's opinion as final and binding, or the parties do not agree to the mediation process either party may submit the issue in dispute to an impartial arbitrator by filing a Notice of Intent to Arbitrate with the FMCS. If the aggrieved party fails to notify the other of its intent to pursue said grievance to arbitration within fourteen (14) calendar days after the mediation, or within fourteen (14) days after the request for mediation is refused the grievance shall be considered abandoned.

(f) *If arbitration is resorted to*, the arbitrator shall be selected by requesting a list of seven (7) arbitrators from the FMCS, all of whom shall be located in California or Nevada and members of the National Academy of Arbitrators. The parties shall alternate striking names from the list, with the Union making the first strike. The decision of the arbitrator shall be final and binding upon both parties. Any expenses of the arbitrator shall be borne equally by both parties. During the period that any matter is before mediation or is in the course of arbitration, as the case may be, there shall be no stoppage of work or other economic action taken by one party against the other.

(g) *The arbitrator or mediator shall only have the authority to grant awards for grievances and shall have no authority to add to, alter, delete, modify or change the terms or provisions of this Agreement*. The decision of the arbitrator shall be final and binding upon the parties.

*Id.* § 27(d)–(g) (emphasis added).

In addition to Section 27, the Agreement provides additional arbitration language in the section titled "401(k) and pension plans." *Id.* § 29. The pertinent subsection states the following:

(b) *Within six-months of ratification of this Agreement, the parties shall meet to establish a new variable rate multiemployer pension plan based on the following guiding principles*:

4

- Recognizing that pension plans have an inherent risk of unfunded liability, the plan shall be established and operated in a manner that seeks to avoid such Employer liability.
- The Employer shall contribute to the pension plan in the same amounts as set forth in subsection 29(a) for all employees hired after ratification.
- Each employee hired prior to ratification shall be given a choice whether to participate in the pension plan or to continue in the Labor Union 40l(k) Plan. Such choice shall be made (i) within thirty (30) days of ratification, or (ii) within thirty (30) days of the pension plan being established, provided that if an employee chooses to participate in the pension plan, he/she may not choose to return to receiving Employer contributions to the 401 (k).
- The Union shall have twenty-four (24) months to obtain agreement from another employer to join the new pension plan. If no other employer agrees to participate, the parties shall re-open this section of the Agreement and bargain a different provision.
- Until the new pension plan is established, the Employer's pension plan contributions (which shall be the same amounts as set forth in subsection 29(a)) shall be placed in an escrow account, with such funds being placed in low-risk investments.
- The Employer shall have one seat on the board of the new pension plan.

*If the parties are unable to agree on the terms of the pension plan document, the dispute shall be resolved through arbitration, with an arbitrator selected as provided in section 27(f).*

*Id.* § 29(b) (emphasis added).

Petitioner alleges it "worked with the Trustees of the San Diego UniteHere Trust fund to develop a pension plan that would address Respondent's concerns regarding unfunded liabilities" addressed in Section 29(b). Petition ¶ 12. Petitioner further claims it "found another hotel employer that agreed to join the new pension plan in or about November 2018." *Id.* ¶ 13. After finding the additional employer to join the pension plan, Petitioner alleges that it "sought to negotiate" with Respondent, who then replied by forwarding a prior proposal and stating that it would contact Petitioner in 2019. Petition ¶ 14. On February 21, 2019, Petitioner reached out to Respondent for dates to negotiate the pension plan, but Respondent did not supply Petitioner with precise dates for negotiation; instead, Respondent replied that it was looking at dates in late March or early

April. *Id.* ¶ 15. On March 5, Petitioner sent a pension plan proposal to Respondent. *Id.* ¶ 16; *see also* Doc. No. 13-2 at 59. Respondent claims the March 5 letter did not propose negotiation dates, enclose modifications, or contain a new pension plan document. Doc. No. 20-1 at 4. On March 11, Respondent had not responded to Petitioner, and Petitioner "exercised its right to submit the unresolved terms of the pension plan to binding arbitration" because the parties were "unable to agree on a pension plan document for a new variable rate multiemployer pension plan pursuant to Section 29, subsection (b) of the collective-bargaining agreement." Petition ¶ 17, 18, 20. On March 28, 2019, Petitioner contacted Respondent to find a time to select the arbitrator. *Id.* ¶ 21. On April 8, 2019, Respondent notified Petitioner "that it was not going to agree to select arbitrators." *Id.* ¶ 22. On April 23, 2019, Respondent notified Petitioner "that it was not going to agree to select arbitrators or agree to negotiation dates." *Id.* ¶ 22. Petitioner alleges Respondent, as of the date of the Petition, "has refused to select an arbitrator or otherwise comply with its arbitration obligations." *Id.* ¶ 24.

## II. LEGAL STANDARD

As an initial matter, Respondent brings its motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) and LMRA § 301. Doc. No. 11 at 2, 5. Petitioner brings its motion pursuant to Rule 56. Neither standard controls when deciding whether a motion to compel arbitration should be granted.[5]

---

[5] The Supreme Court has established a set of foundational principles in navigating arbitration clauses. *See infra*. Further, the Supreme Court has articulated a clear presumption in favor of arbitration and views ambiguities in favor of arbitration. *See AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986); *infra*. The arbitration context and the presumption do not align with the Rule 12(b)(6) mandate to construe factual allegations in the light most favorable to the nonmoving party, *see Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996), or align with the Rule 56 mandate to view evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party—except to the extent necessary under the "whether there is an arbitration clause" step of the analysis, which is not at issue here. *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630–31 (9th Cir. 1987). Accordingly, the Court follows the clear standard provided in Supreme Court and Ninth Circuit precedent.

Federal policy favors arbitration of labor disputes. *Gateway Coal Co. v. United Mine Workers of Am.*, 414 U.S. 368, 377 (1974). Section 301 of the LMRA "does more than confer jurisdiction in the federal courts over labor organizations. It expresses a federal policy that federal courts should enforce these agreements on behalf of or against labor o[r]ganizations and that industrial peace can be best obtained only in that way." *Textile Workers Union of Am. v. Lincoln Mills of Ala.*, 353 U.S. 448, 455 (1957); *see also* 29 U.S.C. § 185(a). The Supreme Court has set forth three foundational principles regarding arbitration clauses.

First, "[a]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT & T Techs., Inc.*, 475 U.S. at 648 (quoting *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960)). In determining whether the parties agreed to arbitrate, a court adopts a standard similar to summary judgment: only making a decision where there is no genuine dispute as to any material fact and the party is entitled to judgment as a matter of law.[6] *See Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1141 (9th Cir. 1991); *Lopez v. Terra's Kitchen, LLC*, 331 F. Supp. 3d 1092, 1097 (S.D. Cal. 2018); *Cordas v. Uber Techs., Inc.*, 228 F. Supp. 3d 985, 988 (N.D. Cal. 2017).

Second, "the question of arbitrability—whether a collective-bargaining agreement creates a duty for the parties to arbitrate the particular grievance—is undeniably an issue

---

The proper motion practice for a petition to compel arbitration differs from a standard complaint. A petition should state the evidence and argument supporting arbitration, a response should give counter evidence and argument opposing the petition, and a reply should offer rebuttal for the petitioner. A petition, followed by a motion to dismiss, and then followed by a motion for summary judgment is needless, repetitive motion practice. Because of the inapplicability of the motion to dismiss and summary judgment standards, the Court construes the motions and accompanying briefs as part of the petition to compel arbitration, response in opposition to the petition, and reply.

[6] The Court emphasizes that this adoption of the summary judgment standard is for the limited purpose of determining whether there is an arbitration agreement and does not pertain to whether the agreement requires arbitration of the dispute. For the latter analysis, which is at issue in this case, the Court is bound by the presumption discussed *infra*.

7

for judicial determination." *Id.* at 649 (citing *Warrior & Gulf Nav. Co.*, 363 U.S. at 582–83, 583 n.7); *see also Beach Air Conditioning & Heating, Inc. v. Sheet Metal Workers Int'l Ass'n Local Union No. 102*, 55 F.3d 474, 476 (9th Cir. 1995) ("Whether a dispute is subject to arbitration is an issue for the courts rather than the arbitrator to decide"). In assessing the question or arbitrability, a court is confined to the arbitration clause, "not the substantive contract clause in controversy." *Haig Berberian, Inc. v. Cannery Warehousemen*, 535 F.2d 496, 499 (9th Cir. 1976). The question of arbitrability belongs to the court and not the arbitrator "[u]nless the parties clearly and unmistakably provide otherwise." *AT & T Techs., Inc.*, 475 U.S. at 649 (citing *Warrior & Gulf Nav. Co.*, 363 U.S. at 582–83, 583 n.7). Arbitrators can decide arbitrability where there is a broad arbitration clause. *See United Bhd. of Carpenters & Joiners of Am., Local No. 1780 v. Desert Palace, Inc.*, 94 F.3d 1308, 1310 (9th Cir. 1996). "A typical broad arbitration clause applies to any disputes or grievances arising out of the collective bargaining agreement or involving its meaning or interpretation." *Bhd. of Teamsters & Auto Truck Drivers Local No. 70 v. Interstate Distrib. Co.*, 832 F.2d 507, 510 n.2 (9th Cir. 1987).

Third, "in deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims." *AT & T Techs., Inc.*, 475 U.S. at 649. In making its ruling, a court is confined to determining (1) whether a collective bargaining agreement is in existence and (2) whether the agreement requires arbitration of the dispute at issue. *See Int'l Union of Operating Engineers, Local 150, AFL-CIO v. Flair Builders, Inc.*, 406 U.S. 487, 491–92 (1972). If a court finds that the answers to those questions are "yes," then a court must compel arbitration. *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) ("[T]he [Arbitration] Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration

on issues as to which an arbitration agreement has been signed.").[7] All other issues, such as procedural disputes, go to the arbitrator. *See Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002) ("'"[P]rocedural" questions which grow out of the dispute and bear on its final disposition' are presumptively *not* for the judge, but for an arbitrator, to decide."); *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 557 (1964) (same). However, the Ninth Circuit has also noted in dicta that "[t]here is some support for the proposition that a court may consider a strictly procedural question as to the timeliness of a demand for arbitration in those rare instances where no factual dispute exists and resolution of the issue would preclude all need for arbitration." *Retail Delivery Drivers, Driver Salesmen, Produce Workers & Helpers Local 588 v. Servomation Corp.*, 717 F.2d 475, 478 (9th Cir. 1983).

In addition to these foundational principles, courts are guided by a strong presumption in favor arbitration. *Phoenix Newspapers, Inc. v. Phoenix Mailers Union Local 752, Int'l Bhd. of Teamsters*, 989 F.2d 1077, 1080 (9th Cir. 1993); *see also Desert Palace, Inc.*, 94 F.3d at 1310; *Dennis L. Christensen Gen. Bldg. Contractor, Inc. v. Gen. Bldg. Contractor, Inc.*, 952 F.2d 1073, 1076 (9th Cir. 1991), *as amended on denial of reh'g* (Dec. 18, 1991) ("In labor contracts with arbitration clauses, the presumption of arbitrability is very strong."). "The party contesting arbitrability bears the burden of demonstrating how the language in the collective bargaining agreement excludes a particular dispute from arbitration." *Phoenix Newspapers, Inc.*, 989 F.2d at 1080. A

---

[7] The Court notes that despite the Arbitration Act not applying to collective bargaining agreements,

> federal courts have often looked to the Act for guidance in labor arbitration cases, especially in the wake of the holding that § 301 of the Labor Management Relations Act 1947, 61 Stat. 156, 29 U.S.C. § 185, empowers the federal courts to fashion rules of federal common law to govern "[s]uits for violation of contracts between an employer and a labor organization" under the federal labor laws.

*United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 40 n.9 (1987) (citing *Textile Workers*, 353 U.S. at 457); *see also* 9 U.S.C. § 1.

petition to compel arbitration should be granted "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *AT & T Techs., Inc.*, 475 U.S. at 648 (quoting *Warrior & Gulf Nav. Co.*, 363 U.S. at 582–83). However, "[w]hile ambiguities in the language of the agreement should be resolved in favor of arbitration, [] we do not override the clear intent of the parties, or reach a result inconsistent with the plain text of the contract, simply because the policy favoring arbitration is implicated." *Waffle House, Inc.*, 534 U.S. at 294 (citing *Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 476 (1989)).

## III. DISCUSSION

Respondent argues the Court should dismiss the Petition because Petitioner "fails to allege a dispute that is subject to arbitration under Section 29 of the [Agreement]." Doc. No. 11 at 8; *see also* Doc. No. 20 at 15. Accordingly, the Court proceeds by assessing (1) whether there is a collective bargaining agreement between the parties and, if so, (2) whether the agreement requires arbitration of the dispute at issue. The first question is undisputed. Both parties agree that there is a collective bargaining agreement. Petition ¶ 9–11 (alleging the collective bargaining agreement between the parties); Doc. No. 12 ("[Respondent] concedes that the parties are subject to a collective bargaining agreement."); Doc. No. 20-2 at 2 (noting that it is undisputed that Petitioner and Respondent are parties to the Agreement).

However, the second question is at issue. Whereas Petitioner alleges that an inability to agree to the terms of a pension plan agreement triggers arbitration, Petition ¶ 19, 28, Respondent argues that "[Petitioner] failed to allege any grievance or dispute that is subject to arbitration under the terms of that agreement," Doc. No. 11 at 5. Respondent further asserts that the Petition is inappropriate because Petitioner failed to follow the grievance procedures under Section 27—specifically that Petitioner failed to allege "(i) any grievance (ii) that it submitted to Omni's Human Resources Director or his or her designee (iii) within fourteen (14) calendar days of the Union having known or should

10

have known of the occurrence of the unidentified grievance." Doc. No. 11 at 9. In opposition, Petitioner argues that it did follow the correct procedure but relies on Section 29(b)'s refence to Section 27(f): "If the parties are unable to agree on the terms of the pension plan document, the dispute shall be resolved through arbitration, with an arbitrator selected as provided in section 27(f)." Agreement § 29(b); Doc. No. 12 at 9. Petitioner further argues that any disagreements over procedural questions and defenses are questions for an arbitrator. *See* Doc. No. 12 at 11–15.

On a more substantive level the parties disagree on whether there are terms of a pension plan to arbitrate. Respondent argues "there was not even an opportunity for an inability to agree to arise" to trigger Section 29(b)'s arbitration provision. Doc. No. 21 at 8. Petitioner argues that Section 29(b) is an "interest arbitration clause" and the dispute triggering the Section 29(b) arbitration clause was Respondent's failure to engage with Petitioner's March 5, 2019 proposal and Petitioner's subsequent submission of the unresolved terms to arbitration. Doc. No. 12 at 9.[8]

As noted above, the question of arbitrability belongs to the court and not the arbitrator "[u]nless the parties clearly and unmistakably provide otherwise." *AT & T Techs., Inc.*, 475 U.S. at 649 (citing *Warrior & Gulf Nav. Co.*, 363 U.S. at 582–83, 583 n.7). The Ninth Circuit has held that parties agreed to arbitrator-decided arbitrability where "[t]he parties agreed to a broad arbitration clause, which require[d] all disputes 'regarding the *interpretation or application* of the provisions of this Agreement raised by the Union or the employee alleging a violation of the terms and provisions of the

---

[8] "'Interest arbitration' is arbitration over new contract terms. Interest arbitration is distinct from 'grievance arbitration,' which covers disputes regarding compliance with an existing agreement." *Int'l Bhd. of Elec. Workers, Local No. 367, AFL-CIO v. Graham Cty. Elec. Coop., Inc.*, 783 F.2d 897, 899 (9th Cir. 1986); *see also Hotel & Rest. Employees, & Bartenders Union, Local 703 v. Williams*, 752 F.2d 1476, 1479 (9th Cir. 1985) (noting that the same rationale applies to enforcing both grievance and interest arbitration clauses). Here, both types of arbitration clauses overlap. Section 29(b)'s pension plan provision is an interest arbitration clause because it addresses potential new contract terms not yet agreed to within the existing Agreement. Section 27 is a grievance arbitration clause because it pertains to terms of the current, existing Agreement.

11

Agreement' to be submitted to arbitration." *Desert Palace, Inc.*, 94 F.3d at 1310 (emphasis added). The *Desert Palace, Inc.* court found that "[t]he only disputes that [were] exempted from the grievance and arbitration procedures [were] those 'disputes specifically excluded in other Articles' of the agreement," but the exclusion clause did not pertain to arbitrability. *Id.*

Here, Section 27 has similar language to the arbitration clause in *Desert Palace, Inc.* Just as in *Desert Place Inc.*, Section 27 defines a "grievance" subject to the arbitration process as "a dispute between the parties as to the *interpretation or application* of *any* provision(s) of this Agreement." Agreement § 27(b) (emphasis added). The language setting forth the guiding principles for a potential pension plan and the consequence of failing to agree on terms in Section 29(b) are provisions under the Agreement. Moreover, Section 29(b) is not excluded from the grievance and arbitration procedure. Thus, the debate as to the interpretation of "if the parties are unable to agree to the terms of the pension plan document," § 29(b), and the terms themselves—if any—fall under an arbitrator's power to decide initial arbitrability. Additionally, given the language stating that the arbitration-grievance procedure is appropriate for disputes pertaining to the interpretation or application of any Agreement provision, Section 27 is a typical broad arbitration clause granting an arbitrator the power to decide arbitrability. *See Desert Palace, Inc.*, 94 F.3d at 1310; *Interstate Distrib. Co.*, 832 F.2d at 510 n.2. Therefore, the Court finds that the question of arbitrability belongs to an arbitrator.

Even if the Agreement does not confer an arbitrator with the power to decide arbitrability, the Court finds that the Agreement requires arbitration of the dispute. The Agreement clearly states that inability "to agree on the terms of the pension plan document shall" result in resolution through arbitration. Agreement § 29(b). Clearly, the parties do not agree to the meaning of "if the parties are unable to agree to the terms of the pension plan document." *Id.* The disagreement is essentially "a dispute between the parties as to the interpretation or application" of Section 29(b). *Id.* § 27(b). Further, the Court is confined to the language of the arbitration clause in assessing arbitrability. Thus,

12

pursuant to Section 27, the clear language of the arbitration agreement requires the Court to adhere to the parties' Agreement and compel arbitration over the "interpretation or application" of Section 29(b). The broad language of Section 27—defining a "grievance" subject to arbitration as "a dispute between the parties as to the interpretation or application of *any* provision(s) of this Agreement," § 27(b) (emphasis added)—clearly includes issues of interpretation as to the language of "unable to agree on the terms of the pension plan document" contained in Section 29(b), even though the exact terms themselves are subject to the interest arbitration clause of Section 29(b).

Moreover, Respondent's arguments regarding timeliness or conditions precedent to arbitration are issues for an arbitrator and not the Court. *See Howsam*, 537 U.S. at 84; *John Wiley & Sons, Inc.*, 376 U.S. at 557. In addition to the clear language of the Agreement requiring arbitration, the Court further finds support for arbitration in the presumption in favor of arbitration where doubts or ambiguities in the language of the Agreement should be resolved in favor of arbitration. *See Waffle House, Inc.*, 534 U.S. at 294; *Warrior & Gulf Nav. Co.*, 363 U.S. at 582–83; *Phoenix Newspapers, Inc.*, 989 F.2d at 1080. Because Respondent fails to overcome its burden to show the Agreement excludes the dispute from arbitration, its challenge to the Petition fails.

Accordingly, the Court **GRANTS** Petitioner's Petition to compel arbitration.[9]

---

[9] Respondent further argues "[t]o the extent Plaintiff is asserting a claim for breach of contract, [Petitioner's] [Petition] must be dismissed because [Petitioner] has failed to allege that [Respondent] breached the parties' [Agreement]." Doc. No. 11 at 11.

The Court finds Petitioner has not pleaded a breach of contract cause of action. The Petition only contains a single cause of action for "Petition to Compel Arbitration" brought under the LMRA." Petition at 11 (emphasis omitted). The substance of Petitioner's allegations focus on compelling arbitration. *See* Petition ¶ 1, 10, 19–24, 28, 29. Moreover, Petitioner does not plead contract breach damages. Rather, Petitioner explicitly requests only two types of relief: (1) an order compelling arbitration and (2) attorneys' fees and costs. Petition at 5–6.

Overall, Petitioner's allegations pertain to arbitration and do not sound in traditional contract. Accordingly, the Court finds Petitioner does not allege breach of contract and declines to consider the motion as to the breach of contract claim.

# IV. REQUEST FOR ATTORNEYS' FEES

## A. Legal Standard

A court has the inherent, discretionary power to award one party attorneys' fees when another party acts "in bad faith, vexatiously, wantonly, or for oppressive reasons." *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 258–59 (1975). The Ninth Circuit has stated that

> "it is generally recognized that labor arbitration advances the goal of industrial stabilization. . . . Engaging in frivolous dilatory tactics not only denies the individual prompt redress, it threatens the goal of industrial peace. Therefore, the deterrence aspect of an award of attorneys' fees is particularly served where a party, without justification, refuses to abide by an arbitrator's award.

*United Food & Commercial Workers Union, Locals 197, 373, 428, 588, 775, 839, 870, 1119, 1179 & 1532, by United Food & Commercial Workers Int'l Union, AFL-CIO v. Alpha Beta Co.*, 736 F.2d 1371, 1382 (9th Cir. 1984) (quoting *International Union of Petroleum & Industrial Workers v. Western Industrial Maintenance*, Inc., 707 F.2d 425, 428 (9th Cir. 1983)). The Ninth Circuit has applied this logic to refusals to arbitrate: "the policy concerns raised by frivolous or bad faith refusals to arbitrate or appeals of district court orders compelling arbitration are the same as those raised by frivolous or bad faith refusals to comply with an arbitration award." *Id.* at 1383. Thus, attorneys' fees are appropriate "when a party frivolously or in bad faith refuses to submit a dispute to arbitration or appeals from an order compelling arbitration." *Id.*

## B. Discussion

Petitioner requests leave of Court to file a motion for reasonable fees and expenses incurred in preparing the Petition and subsequent motions because Respondent's refusal to arbitrate constitutes "bad faith." Doc. No. 13 at 12, 15. Respondent argues that Petitioner fails to show how Respondent meets the standard to award attorneys' fees.

14

Respondent further asserts that it had "a good faith basis to resist interest arbitration" and that attorneys' fees are not warranted even if Petitioner prevails. Doc. No. 20 at 27.

The Court finds that an award of attorneys' fees is inappropriate. Although some of Respondent's arguments here are unsuccessful, the Court finds that Respondent had a good faith objection to arbitration given the facts in this case. In the parties' declarations, for example, the Court notes uncertainty and possible miscommunications as to meetings between the parties and the status of documents pertinent to the dialogue between the parties. *See* Doc. No. 13-2 at 3–4; Doc. No. 20-1 at 3–5; *compare* Doc. No. 13-2 at 3 (stating that Petitioner sent Respondent a description of the proposed pension plan), *with* Doc. No. 20-1 at 4 (stating that Petitioner did not propose dates to negotiate the terms and did not include a copy of the proposed modifications). Specifically, Respondent emphasizes that it did not receive a complete proposal from Petitioner. *See* Doc. No 20-1 at 4–8. Given the evidence, the Court finds that Respondent's actions do not constitute frivolous or bad faith refusals to arbitrate and, thus, declines to use its discretion to award attorneys' fees. Accordingly, the Court **DENIES** Petitioner's motion for attorneys' fees.

## V. CONCLUSION

Based on the foregoing, the Court **GRANTS** Petitioner's Petition to compel arbitration, and **DENIES** Petitioner's request for attorneys' fees. The Court **ORDERS** the Clerk to close the case.

**IT IS SO ORDERED**.

Dated: November 18, 2019

Hon. Michael M. Anello
United States District Judge